IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| THE FEDERAL DEPOSIT INSURANCE CORPORATION, ) ) ) Plaintiff, ) ) v. ) ) HARRY BROWN & CO., LLC; ) STEWARDSHIP INVESTMENTS, LLC; ) HARRY I. BROWN, JR.; and JOHN M. ) BROWN, as personal representative of the ) ESTATE OF HARRY I. BROWN, SR., ) ) Defendants. ) ) HARRY BROWN & CO., LLC; ) STEWARDSHIP INVESTMENTS, LLC; ) HARRY I. BROWN, JR.; and JOHN M. ) BROWN, as personal representative of the ) ESTATE OF HARRY I. BROWN, SR., ) ) Counterclaimants, ) v. ) ) THE FEDERAL DEPOSIT INSURANCE ) CORPORATION, ) ) Counterclaim– ) Defendant. ) | Civ. Action No. 2:13-cv-350-WHA (WO) |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

This cause is before the court on a Motion for Judgment on the Pleadings filed by John M. Brown, as Personal Representative of the Estate of Harry I. Brown, Sr. (Doc. #63), and a Motion to Seal Exhibit A to Appendix 2 to the Motion for Summary Judgment filed by the Federal Deposit Insurance Corporation (Doc. #68).

The case began as a suit by Frontier Bank against Harry I. Brown, Jr.; Harry Brown & Company, LLC; and Stewardship Investments, LLC.  The Federal Deposit Insurance Corporation ("FDIC") became the Receiver for Frontier Bank, and removed the state case to federal court.

The Defendants in the removed case submitted counterclaims to FDIC administratively. FDIC then filed an Amended Complaint, adding John M. Brown as personal representative of the Estate of Harry I. Brown, Sr.  The claims in the Amended Complaint, in relevant part, are two breach of contract claims (Counts I and II), an ultra vires claim (Count IV), lack of consideration (Count V), and conspiracy to breach fiduciary duty and to commit fraud (Count VI).

The Defendants Answered the Amended Complaint and counterclaimed.  FDIC answered the counterclaims, and asserted affirmative defenses to the counterclaims.

The court granted and denied in part a previous Motion for Judgment on the Pleadings or Summary Judgment filed by FDIC.

The instant Motion for Judgment on the Pleadings is due to be GRANTED in part and DENIED in part, and the Motion to Seal is due to be GRANTED.[1]

## II.  STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.  *Mergens v. Dreyfoos*, 166 F.3d 1114, 1116-17 (11th Cir.1999).  The court must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party. *Id.* at 1117.

---

[1] The opposition to the Motion to Seal is primarily an opposition to the substance of the summary judgment, which can be asserted in response to that motion in accordance with the briefing schedule to be set by separate Order.

## III.  FACTS

The facts as alleged are as follows:

This case arises out of the non-payment of promissory notes and guaranties owed to Frontier Bank. Harry Brown, Sr. ("Brown, Sr.") and Harry Brown, Jr. ("Brown, Jr.") were Directors of Frontier Bank.  Two loans were made by Frontier Bank to Harry Brown & Co. which were guaranteed by Brown, Jr. and by Brown, Sr. in a limited amount ("the Guaranty").

The Amended Complaint alleges that in the Spring of 2011, Brown, Jr.; Steve Townson, the CEO and a Director of Frontier Bank ("Townson"); and Brown, Sr. realized that the loans to Harry Brown & Co. exceeded the value of the real estate collateral and that Brown, Jr. did not have the assets to repay the loans.

The Amended Complaint alleges that Brown, Sr. was not in good health and had a will which provided that Brown, Jr. would inherit one-half of Brown, Sr.'s estate. The Amended Complaint alleges that in March 2011, Brown, Sr. changed his will to distribute Brown, Jr.'s interest to Brown, Jr.'s wife, in an attempt to protect Brown, Sr.'s assets.

The Amended Complaint also alleges that Brown, Jr.; and Brown, Sr.; and Townson conspired to obtain a release of Brown, Sr.'s Guaranty. According to the Amended Complaint, Townson informed Bill Logan ("Logan"), Frontier Bank Loan Officer, that the Directors of Frontier Bank had approved a release of Brown, Sr.'s Guaranty, but this was a false statement that Brown, Jr. and Brown, Sr. were aware of and agreed to. Logan is alleged to have executed a release of the Guaranty on April 29, 2011, at the direction on Townson, based on the false representation. The Amended Complaint alleges that the release was procured by fraud and by actions outside of the scope of Townson's authority, and "potentially in violation of federal law

3

regulating troubled banks." (Doc. #39 at p.9). The Amended Complaint also states that no consideration was given in exchange for the release.

Frontier Bank failed in March 2013. On March 8, 2013, the Georgia Department of Banking and Finance appointed the FDIC as Receiver of the business and property of Frontier Bank. The FDIC was substituted as a party in this action on May 15, 2013.

## IV. DISCUSSION

Defendant John M. Brown, as personal representative of the Estate of Harry I. Brown, Sr. (hereinafter referred to as "the Estate") has moved for judgment on the pleadings as to all claims brought by FDIC against the Estate in this case. The Estate argues that the release of Brown, Sr.'s Guaranty was accomplished at a time before the FDIC was serving as Receiver for Frontier Bank, so that the FDIC cannot show that that Guaranty is an existing obligation it owns as an asset. The Estate contends that FDIC lacks standing, and that it is due judgment on the pleadings as to the breach of contract claims in Counts I and II. The Estate also moves for judgment on the pleadings as to claims in Count IV for ultra vires, Count V for lack of consideration, and Count VI for conspiracy to breach fiduciary duty and to commit fraud, on the basis that FDIC has failed to state a claim. The court begins with the arguments regarding Counts I and II, including standing, and then will address the other Counts.

### A. Counts I and II—Breach of Contract Against the Estate

Counts I and II are breach of contract claims. FDIC has alleged that the Estate owes payment on Brown, Sr.'s Guaranty, and that the attempted release of the Guaranty is void.

In moving for judgment on the pleadings, the Estate has argued that the written release of Brown, Sr.'s Guaranty is a defense to enforcement of the Guaranty. The Estate contends that

because the Guaranty was released before FDIC took over for Frontier Bank, there is no obligation, and no claim on the part of FDIC, and no standing to assert a claim.

FDIC has responded that pursuant to 12 U.S.C. §1823(e)(1)(C),[2] the release of the Guaranty by Brown, Sr. is prohibited because it was not approved of the Board of Directors of Frontier Bank.  FDIC argues that it is entitled to bring a breach of contract claim for failure to pay on the Guaranty because the release of that Guaranty cannot be enforced as to FDIC under federal law.

The Eleventh Circuit has explained that §1823(e) "does not apply to the defense that an asset is invalid due to events unrelated to any unrecorded side agreement, or to the defense that no asset existed for the FDIC to acquire." *Bufman Organization v. Fed. Deposit Ins. Corp.*, 82 F.3d 1020 , 1029 (11th Cir. 1996).

In *Fed. Deposit Ins. Corp. v. McFarland*, 33 F.3d 532 (5th Cir. 1994), cited by the Estate, the guarantor had executed a continuing guaranty on debts incurred by her son.  The guaranty was

---

2 The statute provides as follows:
    (e) Agreements against interests of Corporation
    (1) In general
    No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement--
    (A) is in writing,
    (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
    (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
    (D) has been, continuously, from the time of its execution, an official record of the depository institution.
18 U.S.C. 1823(e).

released.   Additional loans were approved for the son, upon which he defaulted.   The bank subsequently closed and FDIC was appointed receiver.   FDIC brought suit on the guaranty.   The district court found that the release failed to meet the requirements of 12 U.S.C. §1823(e) in part because the bank's loan committee minutes did not reflect the lease. *McFarland*, 33 F.3d at 536. The Fifth Circuit reversed.   *Id.* at 539.   The court reasoned that section 1823(e) prohibits the enforcement against the FDIC of undisclosed agreements that would tend to diminish the FDIC's interest in an asset acquired from a failed bank. *Id.* at 536.   The court concluded, however, that the release of the guaranty was not an undisclosed agreement because it was reflected in the loan documents.   *Id.*   Significantly, the court explained that in the case before it, there was no issue of collusion, fraud, or bad faith, or a secret agreement.   *Id.*   The court held that "12 U.S.C. §1823(e) applies only to separate and collateral agreements; not to agreements found in the loan documents themselves." *Id.* at 537.   The court reasoned that the fact that the release is not evidenced on the promissory note does not mean that it is not contained in the loan documents. *Id.*   As to a separate note which was executed before the release of the guaranty, the court held that the "no asset" exception applied.   *Id.* at 538.   The guaranty was not listed as collateral on the note, and so the only way the FDIC was aware of the guaranty was in a search of bank's files, which also contained the release.   *Id.* at 539.

In the instant case, the release of the Guaranty, as described in the pleadings, was part of the loan documents. *See id.* Therefore, applying the precedent discussed, if the release of Brown Sr.'s Guaranty was validly executed in April 2011, then the Guaranty was not an asset at the time the FDIC took over for Frontier Bank in March 2013, and §1823(e) does not apply to the defense that no asset existed for the FDIC to acquire.   *See Bufman Organization*, 82 F.3d at 1029.

6

After being given additional time in which to respond to the Estate's arguments, FDIC has argued that the "no asset" exception does not apply in this case because there was no arms-length negotiation between Frontier Bank and Brown, Sr., but instead there was no consideration, and there was obvious fraud and collusion, so federal law renders such agreements unenforceable as a matter of law unless reflected in the minutes of the Board.  This argument appears to be consistent with the case law discussed above to the extent that the mere fact that a completed transaction releasing an obligation was not reflected in the minutes of the Board is not sufficient to allow the FDIC to void that transaction, which was accomplished before FDIC took over for Frontier Bank, *unless* that transaction was otherwise invalid under state law.  That is, §1823(e) has no applicability to a validly released obligation, but may apply in this case if the Guaranty was not validly released under state law and, therefore, the asset was still in existence at the time that FDIC took over for Frontier Bank.  The court, therefore, turns to the remaining state law claims alleged, and the Estate's motion with regard to those theories.  If the Motion for Judgment on the Pleadings is due to be denied on one of those state law claims, it will also be due to be denied as to the breach of contract claims.

Rather than address the remaining state law claims in order, however, for clarity of discussion, the court begins with Count VI.

B.  Count VI Claim of Conspiracy to Breach Fiduciary Duty and to Commit Fraud

Count VI is a claim of conspiracy to commit fraud and breach of fiduciary duty.  FDIC identifies a misrepresentation made by Townson, and alleges that Brown, Sr. knew of and agreed to the intentionally false statement made by Townson as part of a conspiracy to protect Brown, Jr.'s inheritance.

The Estate states that the pleadings do not identify any misrepresentation by Brown, Sr. to anyone at Frontier Bank, or any reliance on any representation made by Brown, Sr.  The Estate also argues that FDIC cannot state a claim against Brown, Sr. by alleging representations made by Townson, who is not a party in this case.

Civil conspiracy is an agreement between two or more people to do something unlawful or something lawful by unlawful means. *DGB, LLC v. Hinds*, 55 So.3d 218, 234 (Ala.2010). "A plaintiff alleging a conspiracy must have a valid underlying cause of action." *Id.* Accordingly, a civil conspiracy claim fails if the underlying acts do not support a tort claim. *Id.* In the instant case, FDIC has pled a conspiracy to commit fraud and breach of fiduciary duty.

In federal court, state claims for fraud must comply with the heightened pleading requirements in Federal Rule of Civil Procedure 9(b). *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1237 (11th Cir. 2008).  Rule 9(b) requires a party alleging claims for fraud to "state with particularity the circumstances constituting fraud or mistake...." Fed.R.Civ.P. 9(b). Allegations of fraud must contain a showing of the following:  (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud. *Id.* (quotation omitted).

The Amended Complaint alleges that Townson misrepresented to Logan that the Frontier Bank Board of Directors had approved the release of Brown, Sr.'s Guaranty.  FDIC alleges that this misrepresentation allegedly occurred "[o]n or about April 29, 2011." (Doc. # 39 at ¶ 40).  The Amended Complaint alleges that Brown, Jr.; Brown, Sr.; and Townson "devised a scheme to

obtain the release of the Brown, Sr. Guaranty in order to hide Brown, Jr.'s real and intended inheritance so that it would be out of the reach of his creditors." (Id. at ¶ 37).   According to FDIC, this scheme was devised after Brown, Jr. and Brown, Sr. realized that Brown, Sr. would owe money on his personal Guaranty. (Id. at ¶ 36).   Logan, the bank's Loan Officer, is alleged to have executed a release of the guaranty on April 29, 2011, at the direction on Townson, the bank's CEO and a Director, and based on the false information. (Id. at ¶41).   These allegations are sufficient to allege fraud based on a reliance on a misrepresentation made by Townson.

The Amended Complaint also alleges the factual circumstances of a conspiracy.   The Amended Complaint alleges that Brown, Jr. and Brown, Sr. realized that Brown, Sr. would owe money and sought to protect Brown, Jr.'s inheritance.   According to the Amended Complaint, the conspiracy consisted of two parts.   One alleged part of the conspiracy was that in March 2011, Brown, Sr., who was not in good health, changed his will to change the distribution of Brown, Jr.'s interest to Brown, Jr.'s wife.   (Id. at ¶ 36, 38).   The second part was, according to the Amended Complaint, that Townson informed Logan that the Directors of Frontier Bank had approved a release of Brown, Sr.'s Guaranty, but this was a false statement that Brown, Jr. and Brown, Sr. were aware of and agreed to. (Id. at ¶40).   Although the representation was not made by Brown, Sr., "[i]t is not an essential element of the claim that a particular conspirator commit an overt act in furtherance of the conspiracy."   *Huckleberry v. M.C. Dixon Lumber Co., Inc.*, 503 So.2d 1209, 1210-1211 (Ala. 1987).   The Amended Complaint "plausibly allege[s] facts showing that a conspiracy created the alleged scheme."   *American Dental Assoc. v. Cigna Corp*., 605 F.3d 1283, 1921 (11th Cir. 2010).   Therefore, the Motion for Judgment on the Pleadings is due to be DENIED as to the fraudulent conspiracy claim in Count VI.

As to the breach of fiduciary duty claim, again, while Brown, Sr. apparently was not a fiduciary of Frontier Bank at the time he was released from the Guaranty, the allegation of an agreement to obtain the release through fraud, which is alleged to constitute self-dealing on the part of the fiduciaries, also adequately states a claim of conspiracy to commit a breach of fiduciary duty against Brown, Sr.   Because the claims in Count VI are not due to be dismissed, the Motion for Judgment on the Pleadings is also due to be DENIED as to Counts I and II, for the reasons previously discussed.

C. Count IV   Ultra Vires

Count IV is a claim for ultra vires against the Estate.   FDIC alleges that the release of Brown, Sr.'s Guaranty was an ultra vires act procured by fraud and by actions outside of the scope of Townson's authority.

The Estate contends that corporate acts are ultra vires when they are not within the power conferred upon the corporation by its charter, but that FDIC has failed to plead any factual content to support that action was taken outside of the Frontier Bank's corporate charter.   The Estate also argues that Brown, Sr. was not a director of Frontier Bank when the written release was issued to him, and that a debtor cannot commit an act of ultra vires.

FDIC responds that it has alleged the following facts:   the notes; the guaranties, and their breach; that the Frontier loan officer released the Guaranty at the instruction of Townson; and that the release was outside the scope of Townson's authority and "potentially" in violation of federal regulations.   (Doc. #39 at p.9).

As discussed above, because the Guaranty was purportedly released before FDIC took over for Frontier Bank, there must be a separate basis for finding invalidity of the release in order for 12

U.S.C. §1823 to apply in this case.  *See Bufman Organization*, 82 F.3d at 1029.   That is, the requirement that the release be reflected in the Board minutes is a protection for the FDIC, and in this case only is applicable if the Guaranty was not validly released before FDIC took over for Frontier Bank.

  As to the claim based on lack of authorization, FDIC's claim is that although the Guaranty was released, the release was an ultra vires act.   The Amended Complaint states that the release of Brown, Sr. "was an *ultra vires* act of Frontier Bank and is void." (Doc. #39 at ¶47).   FDIC also argues in brief that the release "was signed without authority." (Doc. #71 at p.9).   There is no allegation in the Amended Complaint, however, that Logan, who executed the release, was a co-conspirator or was acting outside of his authority in signing the release.   There also is no allegation that execution of the agreement is outside of the authority of Frontier Bank. Additionally, there are no facts alleged to show that a request to Logan, the Loan Officer, by Townson, a Director, to release a guaranty would be outside of Townson's authority.   The wrongdoing alleged is fraud, or breach of fiduciary duty, in inducing Frontier Bank to execute an agreement based on a misrepresentation of fact.   While the Amended Complaint states Logan was induced to act by Townson's fraud, and that the fraud was not within Townson's authority, it does not allege what authority has been exceeded.[3]   Fraud and breach of fiduciary duty claims have been separately pled.   Because no authority is alleged to have been exceeded which would state a separate ultra vires claim, the ultra vires act claim is due to be dismissed.

  D. Count V Claim of Lack of Consideration

---

3 The Amended Complaint alleges that Logan released the Guaranty in reliance on the representation that the Board of Directors had given approval, but does not allege any factual basis for a requirement that there be such approval, other than the federal statute previously discussed.

Count V is a claim based on lack of consideration.  The Estate cites Alabama statutory law for the proposition that when an obligation is extinguished by a release, it can be accomplished by a "release therefrom given to the debtor by the creditor upon a new consideration or in writing with or without new consideration."  Ala. Code § 8-1-23; *see also Melvin v. Franklin Life Ins. Co*., 151 So.2d 238 (Ala.1963) (stating that a release in writing may not be attacked for lack of consideration alone).  There is apparently no dispute that the Guaranty was released by an executed agreement, (Doc. #40-1), and FDIC has not shown any basis for distinguishing the authority cited by the Estate.  The claim for lack of consideration, therefore, is due to be dismissed.

## V.   CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion for Judgment on the Pleadings (Doc. #63) is GRANTED as to Counts IV and V and those counts are DISMISSED from the Amended Complaint.

2. The Motion for Judgment on the Pleadings (Doc. #63) is DENIED as to Counts I, II, and VI.

3. The Motion to Seal (Doc. #68) is GRANTED.  A briefing schedule on the pending Motion for Summary Judgment will be set by separate Order.

Done this 22nd day of December, 2014.

/s/ W. Harold Albritton

W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE