IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CADLEROCK III, LLC, | ) |
| | ) |
|    Plaintiff, as substituted for | ) |
|    Federal Deposit Insurance Corp. | ) |
| | ) |
| v. | ) |
| | )   CIVIL ACTION NO. |
| | )   2:13-cv-350-PGB-SRW |
| HARRY BROWN & CO., LLC, *et al.*, | ) |
| | ) |
|    Defendants. | ) |

## **REPORT AND RECOMMENDATION**

This suit, initiated in state court by Frontier Bank against Harry I. Brown, Jr. ("Brown Junior"); Harry Brown & Company, LLC ("Brown & Co."); and Stewardship Investments, LLC ("Stewardship"), arises out of the non-payment of several bank loans.[1] During the pendency of the litigation, Frontier Bank failed and the Federal Deposit Insurance Corporation ("FDIC") became the receiver for Frontier Bank. The FDIC removed the state case to this court and then filed an amended complaint, adding as a defendant John M. Brown, as personal representative of the Estate of Harry I. Brown, Sr. ("Estate"). The defendants answered the amended complaint and counterclaimed. After pre-trial rulings and a trial, judgment was ultimately entered in favor of the FDIC on certain claims and in favor of the Estate on all claims asserted against it.

---

[1] The complaint sought repayment for three loans, but the loans pertinent to the pending motions are the two January 22, 2012, promissory notes executed by Brown & Co. that totaled $1,080,000, and for which Harry I. Brown, Sr. had executed a limited personal guaranty.

Now before the court are two motions filed by the Estate: (1) the second renewed application of the Estate for attorney fees, expenses, and costs under the Equal Access to Justice Act ("EAJA") (Doc. 308) and (2) the motion of the Estate for an order conforming judgment for costs (Doc. 321). For the reasons set forth below, the Magistrate Judge recommends that the Estate's motion for fees, expenses, and costs under the EAJA (Doc. 308) be DENIED, and the motion for order conforming judgment for costs (Doc. 321) be GRANTED.

I.   **Procedural and Factual Background**

The pertinent factual background has been set forth in prior orders of the court:

[Brown Junior] and [Brown Senior] were directors of Frontier Bank. Brown [Junior] owned Stewardship… and Harry Brown & Co., LLC [Brown & Co.]. Stewardship entered into a Multipurpose Note and Security Agreement with Frontier Bank and Brown [Junior].was the guarantor of the loan. Stewardship and Brown [Junior] and Frontier Bank later modified the loan on multiple occasions. Two loans were also made by Frontier Bank to … Brown & Co. These loans were guaranteed by Brown [Junior] and were guaranteed in a limited amount by Brown [Senior]. Brown [Senior's] guarantee was released under circumstances which are in dispute in this case. Brown [Junior] resigned as a Director of Frontier Bank in order to secure a renewal of the loan to Stewardship. Brown [Junior] rejected a written Forbearance Agreement. Frontier Bank ultimately demanded payment on all three notes, and the notes were not paid.

Doc. 64 at 3–4.

Relevant to the motions here, the parties' dispute revolves around debts allegedly owed under the two promissory notes executed by Brown & Co. on January 22, 2012, with Frontier Bank. The notes, totaling $1,080,000, were guaranteed in part by Brown Senior, who executed a limited personal guaranty in which he assumed liability on the notes up to

$600,000. On April 29, 2011, Frontier Bank released Brown Senior's limited personal guaranty. *See* Doc. 287 at 2.

> Frontier Bank subsequently sued in Alabama state court to recover on the promissory notes. On February 26, 2013, the state court granted partial summary judgment in favor of Frontier Bank and determined the amounts owed under each note as of September 19, 2012. During the state court proceedings, Frontier Bank failed and the FDIC became its receiver. The FDIC was therefore substituted as party-plaintiff and removed the case to federal court within the time permitted by 12 U.S.C. § 1819(b)(2)(B).

Doc. 287 at 2.

> On May 28, 2014, FDIC filed an Amended Complaint. On June 11, 2014, the Defendants filed an Answer and Counterclaims of All Defendants as follows: Specific Performance: Release of [Brown Senior] (Count One); Breach of Contract: Release of [Brown Senior] (Count Two); Breach of Contract: Agreement to Lend (Count Three); Fraud (Count Four); Lender Liability (Count Five); Breach of Commitment to Lend (Count Six); Breach of Implied Covenant of Good Faith and Fair Dealing (Count Seven); Economic Duress (Count Eight); and Declaratory Judgment: Bank-Owned Life Insurance (Count Nine).

Doc. 64 at 5. The court ruled in favor of the FDIC on counterclaims Three, Four, Five, Six, Seven, and Eight. *Id.* at 10.

In the course of its receivership, the FDIC sold the loans to third parties. On December 4, 2014, the FDIC transferred the Stewardship loan to DIP Lending I, LLC as part of the sale of a pool of loans. Thereafter, the FDIC sought an order allowing it to pursue its claim in Count III regarding the Stewardship loan, or alternatively, to substitute DIP Lending for the FDIC pursuant to Fed. R. Civ. P. 25(c). *See* Doc. 108. On March 23, 2015, the court granted the FDIC's motion to the extent that the FDIC as receiver could pursue its claim in Count III to judgment. (Doc. 112). On December 9, 2015, Cadle

Company II, Inc. purchased the other two loans in this case, and that purchase was documented in a Loan Sale Agreement. The loans were later assigned to CadleRock III, LLC ("CadleRock"), who is now the plaintiff in this case. On February 8, 2016, the court ordered that the purchaser of the loans, Cadle Company, would not be substituted as plaintiff, and the FDIC could continue to prosecute this matter in its own name as it had with the Stewardship loan. (Doc. 208). The parties agreed that the FDIC could continue to pursue the claims.

The case ultimately proceeded to trial in August 2016. After the close of the FDIC's evidence, the court entered partial judgment as a matter of law in favor of the FDIC. By that order, the FDIC secured a judgment of over $1,000,000 on the three loans against Brown Junior and two of his companies. The court also ruled that the Bank had released Brown Senior from his limited guaranty. The court entered judgment in favor of the Estate on the FDIC's claims against it and taxed the Estate's costs of around $14,000 against the FDIC.

> [At trial], the FDIC sought to invalidate the release of [Brown] Senior's limited personal guaranty due to what it alleged was a conspiracy to breach fiduciary duty and to commit fraud; as a result, the FDIC sought to enforce [Brown] Senior's personal guaranty and to recover the amounts owed under the promissory notes from [the Estate]. Following the close of the FDIC's case-in-chief, the Court entered judgment as a matter of law in favor of the Estate, [Brown Junior], and Brown & Co. on the FDIC's conspiracy to breach fiduciary duty and to commit fraud claim (Count VI), finding that the FDIC had failed to adduce sufficient evidence that would allow a rational jury to find that a conspiracy to breach fiduciary duty and to commit fraud existed.

Doc. 287 at 2–3. In February 2017, judgment was entered in favor of the FDIC on counts one and two against Brown & Co. and Brown Junior, and against Stewardship and Brown

4

Junior on count three. Doc. 269 at 2. The FDIC lost on its claims in counts four, five, and six as to all defendants. Judgment was entered in the Estate's favor and against the FDIC in counts one, two, and three. Defendants did not prevail on their counterclaims. *Id.*

Thereafter, the district judge addressed three post-trial motions. First, the FDIC requested judgment as a matter of law on Count VI, seeking to avoid the release of Brown Senior's personal guaranty due to an alleged conspiracy to breach fiduciary duty and to commit fraud. The court did not consider the motion, however, because the FDIC never moved for judgment as a matter of law on Count VI pursuant to Federal Rule of Civil Procedure 50(a) at the close of the evidence and, thus, its renewed motion for judgment as a matter of law was procedurally improper and therefore denied. *See* Doc. 287 at 3.

Second, the FDIC moved the court, pursuant to Federal Rule of Civil Procedure 59(e), to reconsider its entry of judgment as a matter of law in favor of the Estate, Brown Junior, and Brown & Co. on Count VI. The FDIC argued that the court misapplied the law governing Count VI by improperly shifting the burden of proof. Specifically, the FDIC claimed that, while it had the initial burden to prove the validity of Brown Senior's personal guaranty, the burden then should have shifted to the Estate to prove the validity of the release of that guaranty. The FDIC claimed that only after the Estate proves the validity of the release does the burden shift back to the FDIC to prove that the release was procured by a conspiracy to breach fiduciary duty. The court rejected the FDIC's argument, and held that the FDIC had to prove its claim first. The court concluded that it was the FDIC's burden in the first instance to prove its claim that the release was procured through a conspiracy to breach fiduciary duty and to commit fraud. *See* Doc. 287 at 4–8.

5

> As explained by the court:
>
>> The FDIC has proceeded under the theory that the release of [Brown] Senior's guaranty was procured by a conspiracy to breach fiduciary duty and to commit fraud and that, for this reason, the personal guaranty remains effective and § 1823(e) can be used to avoid the release. However, because of the release, [Brown] Senior's personal guaranty was extinguished before the FDIC took over Frontier Bank. As a result, the FDIC never acquired the personal guaranty, thus invoking the "no asset exception" and removing the guaranty and release from the purview of § 1823(e) and *D'Oench Duhme*. The only way the FDIC could have prevailed in this case was to prove that the release was invalid in some way, thereby reviving [Brown] Senior's guaranty.

(Doc. 287 at 7). Thus, the court determined that § 1823(e)[2] and the *D'Oench Duhme*[3] doctrine did not apply because no asset existed for the FDIC where Brown Senior was released by a written agreement that was contained in the bank's records *prior* to the FDIC taking over.

---

[2] Section 1823 provides in pertinent part:
> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement— (A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and(D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1).

[3] "The *D'Oench* decision is the origin of the rule that, in a suit against the maker of a note by a federal deposit insurer, the maker is not allowed to raise a secret agreement between the maker and the payee bank as a defense." *Bufman Org. v. F.D.I.C.*, 82 F.3d 1020, 1023 (11th Cir. 1996) (citing *D'Oench, Duhme & Co. v. F.D.I.C.,* 315 U.S. 447 (1942)).

In the third motion, the FDIC moved for a new trial on the basis that the court made multiple evidentiary errors necessitating reversal. The court denied the FDIC's motion on June 21, 2017. Doc. 287 at 8–9.

In October 2016, the Estate filed a motion for fees and costs under EAJA. (Doc. 264), which the court denied as premature. (Doc. 270). On February 28, 2017, the Estate, as the prevailing party, filed a bill of costs, *see* Doc. 18, and on March 16, 2017, the Clerk taxed costs against the plaintiff FDIC and in favor of the Estate in the amount of $14,019.07. (Doc. 280). On May 1, 2017, the Estate filed a renewed motion for attorney's fees pursuant to the EAJA. (Doc. 284).

On July 21, 2017, the FDIC, "as Receiver for Frontier Bank, and on behalf of CadleRock III, LLC, its assignee" filed a notice of appeal (Doc. 288). Defendants cross-appealed. (Doc. 293). Because the case was on appeal to the Eleventh Circuit, the district court denied without prejudice the renewed application for fees, indicating that the Estate may re-file the motion, if appropriate, after the appeal. (Doc. 292).

On October 16, 2018, the Eleventh Circuit issued an opinion, addressing (1) whether CadleRock III, LLC, should be substituted as plaintiff, and (2) the merits of the appeal. (Doc. 307). In discussing the substitution issue, the Eleventh Circuit stated as follows:

> On December 9, 2015, the FDIC sold the two notes at issue in this case to Cadle Company II, Inc., which then assigned them to CadleRock III, LLC. Before trial, the District Court ruled that the FDIC could continue as plaintiff as permitted by Federal Rule of Civil Procedure 25(c). Then, while this case was on appeal, CadleRock sought to substitute itself as the plaintiff in this action. This Court denied CadleRock's motion in January 2018. In July, the FDIC filed a letter advising this Court that it had not authorized this appeal and that the receivership entity created to serve as the receiver for Frontier Bank had "ceased to exist as a legal entity." The

7

> FDIC suggested that this Court reconsider CadleRock's motion to substitute. In light of the undisputed fact of the receiver's nonexistence, we GRANT CadleRock's motion to substitute. CadleRock III, LLC shall be substituted as the plaintiff in this action in place of the Federal Deposit Insurance Corporation, as receiver for Frontier Bank. We thus refer to CadleRock as the plaintiff.

(Doc. 307 at 3–4). On the merits, the Eleventh Circuit found no valid arguments raised on appeal by FDIC/CadleRock. The court criticized counsel's cut-and-paste briefs seeking relief from the appellate court that could only be granted by a district court. In dismissing the appeal, the Eleventh Circuit advised it would consider sanctions against counsel on the basis of filing a frivolous appeal or for unreasonably multiplying the proceedings.

On November 15, 2018, the Estate filed a second renewed motion for attorney fees, expenses and costs under EAJA. (Doc. 308). On the same date, the Estate asked the court to stay consideration of the fee application until the sanction action in the Eleventh Circuit concluded. (Doc. 309).

On December 18, 2018, the district judge entered an order directing the Clerk to substitute CadleRock III, LLC, as plaintiff in this action in place of the FDIC. (Doc. 315). The substitution was ordered based on the Eleventh Circuit's opinion of October 16, 2018, requiring the substitution in the appeal. *Id.*; *see also* Doc. 307 at 4.

On January 7, 2019, the Estate filed a motion seeking an order conforming the cost judgment to be in the name of CadleRock, based on the court's substitution of CadleRock as the plaintiff in place of the FDIC. (Doc. 321). Because CadleRock is now the named plaintiff, the Estate contends that the cost judgment must be conformed to substitute and identify CadleRock as the costs judgment creditor.

CadleRock filed briefs in opposition to the Estate's second renewed application for attorney fees, expenses and costs, and in opposition to the motion to conform the cost judgment. (Docs. 327, 328). In response to the fee motion, CadleRock argues that EAJA fees are not available where the FDIC was acting in its capacity as receiver for Frontier Bank. Additionally, it maintains that EAJA fees are not available in tort actions. CadleRock also argues that it did not purchase the tort claims against the Estate, and in any event, did not purchase the loans until four years into the litigation.

Similarly, in its objection to the Estate's motion for order conforming the cost judgment, CadleRock contends that the motion must be denied because CadleRock was not present for, nor did it participate in, the trial. (Doc. 328). Because the FDIC was the plaintiff at the time the cost judgment was entered, CadleRock claims that the Estate must collect its cost judgment from the FDIC. *Id.* The Estate filed a reply, arguing that the EAJA applies to the FDIC, which was acting as a federal agency, and that the *Schock* case relied on by CadleRock is unpersuasive. (Doc. 329).

On January 10, 2019, the Eleventh Circuit issued an opinion declining to impose sanctions against the FDIC/CadleRock counsel. (Doc. 323-1). Despite what it found to be deficient, negligent and sloppy briefing, the court did not view CadleRock's appeal as wholly without merit. *See id.* at 4.

## II. Legal Standard

The Estate seeks an award of fees, expenses and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA"). The EAJA contains two provisions for awarding

attorneys' fees to plaintiffs which obtain in civil suits brought by or against agencies and departments of the United States. In pertinent part, the EAJA provides:

> Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.
> …
> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(b), (d)(1)(A).

**III. Discussion**

    *A. Motion for Order Conforming Cost Judgment*

After prevailing on the claims asserted against it, the Estate obtained a cost judgment in its favor. *See* Doc. 280. The court taxed costs of a little over $14,000 against the plaintiff FDIC and in favor of the Estate. *Id.* Because CadleRock was substituted as the plaintiff in this case, the Estate now moves for an order conforming the cost judgment to have CadleRock substituted for the FDIC. *See* Doc. 321. CadleRock opposes the motion, arguing that it was not substituted as a party to this action until the Eleventh Circuit rendered an opinion on October 16, 2018. *See* Doc. 328. Additionally, CadleRock

10

maintains that it only purchased certain claims from the FDIC, and those claims did not include the claims asserted against the Estate. CadleRock submits that the Estate's remedy is to collect the costs from the FDIC.

As all the parties are aware, however, the FDIC as receiver no longer exists as a legal entity. This was the reason the Eleventh Circuit substituted the real party in interest— CadleRock— for the FDIC. *See* Doc. 307 at 4. As early as 2015 the issue of the loans' being purchased by the Cadle entities was raised with the court. At that time, the court determined that the FDIC could continue prosecuting the claims on behalf of the true owner of the loan. *See* Doc. 208. This ruling was consistent with the earlier ruling in which the court determined that the FDIC could continue as the plaintiff with regard to the Stewardship loan despite the sale of the loan to DIP Lending I, LLC. *See* Doc. 112. As explained by the court:

> Rule 25(c) of the Federal Rules of Civil Procedure provides that if an interest is transferred, the action may be continued by the original party, or the transferee may be substituted. Substitution under this Rule is committed to the discretion of the district court. *See Virgo v. Riviera Beach Assoc., Ltd.*, 30 F.3d 1350, 1357 (11th Cir. 1994). Even if not named, successors in interest are always bound by the judgment. *See FDIC v. Bristol Home Mortgage Lending, LLC*, No. 08-81536, 2009 WL 2488302 (S.D. Fla. Aug. 13, 2009).

(Doc. 112 at 2). Indeed, had the outcome resulted in a judgment against the Estate, no doubt CadleRock would be seeking to collect for its benefit from the Estate the $600,000 guaranty made by Brown Senior.

CadleRock has been substituted as plaintiff in this case. As soon as the Cadle Company purchased the two loans and then assigned them to CadleRock, CadleRock

became the successor in interest and was bound by the judgment. In its response to plaintiff's motion, CadleRock attempts to distance itself from the litigation, claiming that it came into the case late, was not involved in all the early discovery disputes, and did not purchase the claims against the Estate of Brown Senior, and therefore should not be responsible for the cost judgment. It is apparent from the filings, however, that CadleRock was the entity directing the appeal,[4] which included appealing the judgment in favor of the Estate. *See* Doc. 307 at 4. Thus, CadleRock's contention that it had nothing to do with the claims related to the Brown Senior guaranty and release ring hollow. As successor in interest, CadleRock is bound by the judgment, including the cost judgment. Accordingly, the motion to conform cost judgment (Doc. 321) is due to be granted, and CadleRock should be substituted as the plaintiff in place of the FDIC in the cost judgment rendered in favor of the Estate.

    B.    *Motion for EAJA Fees*

The Estate has filed a motion seeking an award of fees pursuant to subsections (b) and (d) of the EAJA. The EAJA allows for an award of attorneys' fees to parties that prevail in civil suits brought by or against agencies and departments of the United States. As discussed above, the plaintiff in this case is now CadleRock. CadleRock is a private entity, and is not an agency or department of the United States. The court could deny the Estate's

---

[4] CadleRock sought to substitute itself as the plaintiff in the appeal. The appellate court denied CadleRock's motion in January 2018. Thereafter, in July, the FDIC filed a letter advising the Eleventh Circuit that it had not authorized the appeal and that the receivership entity created to serve as the receiver for Frontier Bank had "ceased to exist as a legal entity." The FDIC suggested that the court reconsider CadleRock's motion to substitute. *See* Doc. 307 at 4.

motion on this basis alone. Additionally, as suggested in the FDIC's brief in opposition, it is questionable whether an EAJA claim can be pursued against the FDIC when it is acting in its role as a receiver. *See Schock v. F.D.I.C.*, 118 F. Supp. 2d 165, 169–70 (D.R.I. 2000) ("As a receiver, the FDIC does not act on behalf of the United States government, and it does not perform any function unique to the federal government. Instead, it acts on behalf of the failed bank in the interest of that bank's creditors."); *see also Placida Prof'l Ctr., LLC v. F.D.I.C.*, No. 8:09-CV-2221-T-30MAP, 2012 WL 4903323, at *3 (M.D. Fla. Oct. 16, 2012), *rev'd on other grounds*, 512 F. App'x 938 (11th Cir. 2013) (agreeing with the FDIC–R's contention that it is not a federal agency for purposes of the EAJA.). The question of whether the FDIC is subject to EAJA fees when it acts as receiver need not be reached, however, because the motion is due to be denied in any event. An analysis of provisions (b) and (d) of the EAJA indicates that an award of fees is not warranted under the Act.

In its second renewed application for attorney fees under EAJA, the Estate seeks an award of $165,640.06 against CadleRock for the fees and expenses it incurred in litigating this action. The primary purpose of the EAJA is "to ensure that [private parties] will not be deterred from seeking review of, or defending against, unjustified governmental action because of the expense involved in securing the vindication of their rights." H.R. Rep. No. 99–120, at 4 (1985), *reprinted in* 1985 U.S.C.C.A.N.132, 132–33. However, "because EAJA is a partial waiver of sovereign immunity it 'must be strictly construed in favor of the United States.'" *W. Watersheds Project v. U.S. Dep't of the Interior*, 677 F.3d 922, 927 (9th Cir. 2012) (quoting *Ardestani v. INS*, 502 U.S. 129, 137 (1991)).

There are two provisions under the EAJA under which a prevailing party may hold a governmental entity liable for fees and costs. First, in section 2412(b), sovereign immunity is waived and the United States is made liable for "fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. §2412(b). Because of this provision, the equitable exceptions to the American Rule apply to the federal government in the same manner as they apply to private litigants. *Panola Land Buying Ass'n v. Clark*, 844 F.2d 1506, 1510 (11th Cir. 1988). Thus, an award of fees would be proper in situations where the government has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons" in its conduct of litigation. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975).

In its motion, the Estate repeatedly argues that plaintiff acted in "bad faith," but most of its arguments center on a disagreement regarding factual and legal positions. The Estate contends that plaintiff's counsel "created mind-numbing discovery disputes," engaged in "tricks and recalcitrance," produced trial exhibits late, and switched corporate representatives at trial. While such conduct by counsel is disfavored, these allegations do not rise to the level of vexatious, wanton, or oppressive conduct that would support an award of fees on the basis of "bad faith."

The other provision of the EAJA providing for prevailing party fees grants an award of fees to a party "in any civil action (other than cases sounding in tort) … brought by or against the United States …, unless the court finds that the position of the United States

was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The Estate claims that the FDIC's position was not substantially justified.

However, this provision is not available to support an award of fees in cases sounding in tort. *See* 28 U.S.C. § 2412(d)(1)(A). Moreover, in reviewing the arguments made throughout the course of the litigation, the court cannot conclude that the FDIC's position was not substantially justified.

In sum, the FDIC sought to invalidate the Brown Senior release on the theory that Brown Junior and Brown Senior colluded to obtain the release of Brown Senior's guaranty because Brown Senior was liable on the loans. With Brown Senior's health failing, FDIC posits that father and son conspired to have Brown Senior change his will to avoid leaving money to Brown Junior so that Brown Junior would not be liable on the loans. Instead, Brown Senior left Brown Junior's share of the estate to Brown Junior's wife. The validity of the Brown Senior release was litigated at length in this case. In one order, the court summarized the issue as follows:

> FDIC's position on the issue remaining for disposition in the Motion for Summary Judgment is that the reliance on the release of the limited guaranty by Brown, Sr. is prohibited by 12 U.S.C. §1823(e) and *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1994), because the release was not approved of the Board of Directors of Frontier Bank, and no exception applies. FDIC also has argued that there was no arms-length negotiation between Frontier Bank and Brown, Sr., but instead there was fraud and collusion. This court has previously agreed that *D'Oench* and §1823(e) could apply to the release of Brown, Sr.'s guaranty if the guaranty was not validly released under state law. Because there are fact issues as to fraud, however, the court was persuaded that a question of fact also precluded summary judgment on the counterclaims based on the "no asset" exception to *D'Oench* and §1823(e) as applied in the persuasive authority of the Fifth Circuit's *McFarland* case.(Doc. #78, 138).

15

(Doc. 152 at 3).The issue regarding the validity of the Brown Senior release was raised at various stages of the litigation. The court acknowledged that §1823(e) *could* apply to the release in certain circumstances. However, the FDIC came up short on its proof at trial and the court entered judgment in favor of the Estate as a matter of law. The fact that the FDIC did not prevail on the issue, however, does not necessarily mean that the FDIC was not substantially justified in pursuing its theory. A party does not have to prevail in order for its position to be substantially justified. *See Lumpkin v. Barnhart*, 493 F. Supp. 2d 1199, 1202 (S.D. Ala. 2006) ("the fact that the government lost its case does not raise a presumption that the government's position was not substantially justified."). Accordingly, the court finds that, because the FDIC's position was substantially justified, the Estate's motion for fees under § 2412(d)(1)(A) should fail.

**IV.   Conclusion and Recommendation**

For the reasons stated, it is the RECOMMENDATION of the Magistrate Judge that:

1. The renewed application of the Estate for attorney fees, expenses, and costs under the Equal Access to Justice Act (Doc. 308) be DENIED; and

2. The motion of the Estate for an order conforming judgment for costs (Doc. 321) be GRANTED.

**V.   Notice to parties**

It is hereby **ORDERED** that **on or before August 6, 2019**, the parties may file an objection to the Recommendation. Any objection filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file a written objection to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 22nd day of July, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge